# FRANCISCO SEMIDEY ET AL.

## *v.*

# CENTRAL AGUIRRE COMPANY ET AL.

Ponce, Equity, 271, San Juan, Equity, No. 874.

1. An attempted exercise by the lessee, after a material breach by him of the lease, of his option to renew the lease by an attempted extension of a sublease for the renewal period, does not have the legal effect of making such extension, in the face of the existing breach.

2. A party to a contract may, at any time that a breach of its terms is committed by the other party, declare a rescission upon allegation of such breach, with the legal effect of an absolute termination of the contract.

3. Where a governmental water concession is granted for the purpose of irrigating specific lands, under the Law of Waters of 1866, providing that in every concession of the use of public waters a term shall be fixed for the completion of the works, and that the authorities which granted the concession may declare it lapsed whenever, even after the works are completed, there has been a failure to use the water for the continuous period of a year and a day for the object for which it was granted, the government may declare such concession lapsed, in case of the continuous diversion, for more than a year and a day of part of the waters granted, to other lands than those specified in the concession.

4. In case of a diversion of waters granted by a governmental water concession for the purpose of irrigating specific lands, to other lands,

---

NOTE.—On the question of holding over after expiration of lease, with option for extension or renewal, without formally exercising option, see note in 29 L.R.A.(N.S.) 174.

As to assignment of lease, generally, see note in 15 L.R.A. 754. And for the enforcement of landlord's consent to assignment of lease, see note in 25 L.R.A.(N.S.) 1173. And upon the tenant's right to sublet premises, see note in 4 L.R.A.(N.S.) 707.

affirmative action of rescission of such concession can be taken by
the government at any time upon proof of such diversion, without
the necessity of awaiting the lapse of twenty years of nonuser.

5. Section 1453 of the Civil Code of Porto Rico does not authorize a
lessee to assign the lease.

Opinion filed July 22, 1912.

---

*Mr. Perry Allen* for complainants.

*Messrs. Hartzell & Rodriguez Serra* for defendants.

CHARLTON, Judge, delivered the following opinion:

On January 9th, 1912, the complainants filed a bill against
the respondents, alleging that they are the owners of a sugar
estate in the municipal district of Guayama, Porto Rico; that
the respondent Central Aguirre Company is a corporation en-
gaged in the raising of cane and the manufacture of sugars in
the island of Porto Rico; that on July 30th, 1901, the complain-
ants leased said sugar estate, called Hacienda Teresa, to said
company for the period of ten years from August 1st, 1901, with
the option to said company of a renewal of said lease for a fur-
ther period of ten years under like conditions; that appurtenant
to the lands of the Hacienda Teresa were certain rights in a gov-
ernmental water concession, for the use of certain specified por-
tions of the waters flowing in the rivers Lapa and Majada, said
concession also providing that said waters might be used also on
the estates called Amadeo, Carmen, and Aguirre, in addition to
the Hacienda Teresa, and in the 8th section of said water con-
cession it was provided:

"That the waters granted are inseparable from the hacienda

(Amadeo, Carmen, Teresa, and Aguirre) for which they are granted; they cannot be utilized for other purposes, nor the one alienated without the others."

The bill further charged that Central Aguirre Company, the original lessee, had assigned its lease to the respondent Smith without the consent of the complainants; that said Smith, without consent of complainants, assigned and sublet the interest so acquired by him to the respondents Frazer, Rogers, and Noyes, of whom the respondent Noyes is the successor in interest, and under the terms of which instrument the waters so as above made appurtenant to the Hacienda Teresa were, by express stipulation, separated; that by confederation between the respondent Manuel Gonzalez with the other respondents, the said Gonzalez, by the permission and connivance of the other respondents, was permitted to divert a considerable portion of the waters covered by the concessionary grant above referred to, from any of the four estates named in said concession, particularly from the lands of the Hacienda Teresa, and had permitted the irrigation canal through which the said waters had formerly been conducted to and upon lands of the Hacienda Teresa to become dried up and abandoned; furthermore that, although required in the original lease to keep existing fences in repair, the respondent Central Aguirre Company had permitted the same to be removed and destroyed.

Complainants further alleged and set out, that in consequence of said acts and doings, upon the expiration of the first term of lease, to wit, at and before July 31st, 1911, the said respondent Central Aguirre Company was duly notified by complainants that they would decline to renew the lease for a further period of ten years, as they alleged their right to be; but that the re-

spondents and each of them declined to deliver possession of said lands to the complainants, and have since August 1st, 1911, retained the same in their possession, and have failed to pay, or to tender to pay, any rental for the use and occupation of the lands comprising the said Hacienda Teresa.

It was further alleged by complainants that, subsequent to the bill filed herein, and before the same was filed, and during imparlance arranged between counsel of respective parties, changes in the theretofore condition of the canal and fences upon the Hacienda Teresa were made and done, or caused to be made and done by the respondents, or some of them, in violation of the stipulation of imparlance, intending to urge such changes and replacements as matter of defense, although thereby materially changing the theretofore existing *status quo,* which constituted one of the grounds upon which the bill of the complainants was based.

Other matter was alleged in the bill of a material nature, which is now not necessary to be considered.

The bill was filed upon January 9th, 1912, and upon March 2d, 1912, there was filed on behalf of the respondents a general demurrer, which, it was agreed by stipulation, was to be heard and determined by the court upon written briefs to be submitted. Counsel for both parties submitted able and exhaustive briefs upon all the matters raised by the demurrer to the bill, and, going beyond each particular specification of the bill, also beyond the scope covered by the form of the demurrer.

The questions raised by the pleadings and briefs were of such complicated topographical character that the court decided that a physical inspection of the premises was necessary to a correct understanding and determination of the questions presented.

Accordingly, upon June 21st, 1912, he proceeded to the lands and canals in question, and made a thorough investigation of the whole of them, with a view to establishing in his own mind the present situation and the apparent permanence or impermanence of the works upon the ground. In making this examination the court was assisted by the complainants Don Francisco Semidey, and Sr. Agustin Costa, and by Mr. C. L. Carpenter, assistant general manager of the Central Aguirre Company, by Mr. Robert B. Noyes, and by their counsel Charles Hartzell, esquire.

The points hereafter referred to will be found plainly indicated upon the blue-print plan which is attached to this opinion, a copy of which was used upon the ground, and the various points and directions were identified from it. Examination was first made of the point at which the Gonzalez canal and the Aguirre canal and the canal to Amadeo, Carmen, and Teresa diverge. This with a view of ascertaining primarily what amount of water was diverted from the main canal into the Gonzalez canal, which was found at a $\frac{3}{4}$ flow, to be water $4\frac{1}{2}$ inches deep in a concrete ditch 22 inches wide, whereas the main ditch at said point was 42 inches wide by $4\frac{1}{2}$ inches deep. The intake of the Lapa canal, to the north, was next examined, and it was found that at something less than $\frac{3}{4}$ flow from the Lapa river the stream was $4\frac{1}{2}$ inches deep and 35 inches wide. Therefore the Gonzalez diversion, the waters of which are conducted onto lands entirely separate from any of the four haciendas controlled by the respondents, took apparently $\frac{1}{2}$ the water which flowed from the main ditch, and therefore approximately $\frac{1}{2}$ of the whole intake of water covered by the concession from the Lapa and Majada rivers.

Subsequently careful physical examination was made not only of the lands of the Hacienda Teresa itself and of the ditches existing thereon, but beyond the line of said hacienda to a point where its subcanal joins the main canal at a point where the main canal is diverted to Carmen and to Teresa. Ocular proof was here indisputable that the physical condition of the main ditch and of the diversion to Carmen showed them to have been undisturbed for such a considerable period that the banks were overgrown with vegetation to such an extent as almost to cover the water flowing beneath, and appear to have been undisturbed for a very considerable period. It was also abundantly apparent that comparatively recent changes had been made at this point of diversion, in the reconstruction of concrete foundations and walls for a diversion gate, and the installation of diversion gates, the material of which was so apparently new and recently installed as to lead irresistibly to the conclusion that they had been placed there comparatively recently,—especially when the diversion towards the Teresa was examined, and it was found that from the point where the diversion from the main ditch to the Teresa took place the subcanal was very apparently of far more recent construction than that of the main canal and the subcanal to Carmen, with its banks completely bare of vegetation, its slopes sharply and clearly defined, and particularly because the ratoons on either side of the subcanal, being placed at regular distances apart, showed that the distances between the clumps of ratoons on either side of the canal would leave a sufficient distance between them to have placed another set of ratoons in the center of the canal. It was admitted also in the conversation that took place between the parties, in response to an inquiry by the court as to the meaning of the continuation of a

ditch from the Godreau pump (to the north and west of the Teresa diversion) that water from that pump, conveyed over the main canal, had been used upon lands of the Teresa while the intake from the main ditch to Teresa had been closed. The Godreau pump had been at one time theretofore leased by the respondent Central Aguirre Company, and the waters produced thereby used upon the haciendas Teresa and Carmen during the continuance of a cane contract between the owners of the Godreau hacienda and Central Aguirre; but that when said contract was concluded, the Central Aguirre ceased the leasing of the pump.

Oral and visual examination was also made as to the diversion of water by subcanal from the Teresa pump, and it was conclusive that water from said pump had been used for the irrigation of the Teresa lands, both north and south of the situation of the pump.

No observation was made as to the situation of the existing fences or their former location.

Taking up now the points of demurrer discussed in the briefs of counsel for both sides, there will first be examined:

*I. Transfer by the Original Lessee to Smith.*

The original lease by complainants to the respondent Central Aguirre Company (exhibit A to bill) was executed on July 30th, 1901, and was, as hereinbefore stated, of the lands of Hacienda Teresa for a period of ten years from August 1st, 1901.

Under § 6 thereof the Central Aguirre was authorized to install upon the hacienda a railroad and irrigation pump "to

carry out the waters thereof by ditches or pipes, and convey the same to adjacent lands." Under § 8 of the contract it was provided that in case the Central Aguirre should lease the hacienda to another person the contract should remain in full force and effect, upon the primary responsibility of Central Aguirre.

It is claimed that, under § 1453 of the Civil Code of Porto Rico, a lessee is expressly authorized to sublet, and that under the 8th clause of the original lease said authority is recognized. In opposition to this contention of the demurrants, counsel for complainants, in his brief, states that it is the right of complainants, under article 1472 of the Civil Code, to recover possession by reason of the breach of any of the conditions of the contract between the parties hereto.; and, in his brief, traces the history of § 1542 of the Civil Code of Porto Rico, which is § 1550 of the Civil Code of Spain. The brief contends, and the court has by its own investigation convinced itself of the truth of the contention, that among the bases which were enacted by the Spanish Cortes, and approved by the Queen Regent, of the Civil Code promulgated May 11th, 1888, "the project of 1851" was one. Said project contained, among other things, the provisions of article 7 of the law of June 8th, 1813 (re-enacted Sept. 1, 1836), which declared that "the lessee can neither sublet nor assign the whole, or any part, of the estate without the approval of the owners," and that the re-enactment of § 1453 of the Civil Code of Porto Rico adopted the provision of § 1550 of the Civil Code of Spain to the extent that it permitted a sublease, but, by an omission, forbade an assignment of lease, and that this is made certain by the provisions of paragraph 7 of the Transitory Provisions of the Porto Rican Code (paragraph 13 of the Spanish Code) :

"Cases not directly comprised in the previous provisions shall

be decided by applying the principles which serve for their foundation."

The court therefore finds that the prohibition against the assignment of lease is forbidden, as not having been affirmatively permitted by the new Code, although a sublease was not prohibited.

The facts as alleged by the bill are admitted by the demurrer; parties are concluded by the phraseology which they have elected to use; the demurrer is therefore overruled upon its first point for the reason aforestated.

## II. Transfer from Smith to Fraser et al.

This instrument claims by its terms to be a sublease, and not an assignment. In its preamble the assignment of the lease from the Central Aguirre to Smith is recited as an "assignment of lease." Equivalent words are used in paragraphs 2 and 3. It is unimportant what phraseology is used, in view of the fact that the court has held that the original assignment from Central Aguirre to Smith was without authority of law, upon point 1 raised in the brief on the demurrer of respondents.

The eighth condition of the concession for the water rights here involved provides:

"The waters granted are inseparable from the haciendas for which they are granted; they cannot be utilized for other purposes, nor the ones alienated without the others."

Both briefs submitted present their adverse views upon the effect of these provisions from the aspect that they are important or unimportant in the event of the government intervening

for nonuser, at the end of twenty years. The court considers and construes the provision of this restriction in an utterly different aspect, and it is obvious to it that, in case of a diversion of water from the lands provided for in the concession, affirmative action of rescission could be taken by the government at any time, upon proof of diversion of waters, without the necessity of awaiting the lapse of twenty years of nonuser. The grant was for the purpose of irrigating specific land topographically, and a continued diversion to other lands constitutes a breach of the conditions in a radically different aspect from a nonuser of the waters upon the lands covered by the concession, but not therefore, necessarily, a less basic breach.

In the sublease or assignment from Smith to Frazer, Rogers, & Noyes, it is provided in its 6th clause that "the rights acquired by the Central Aguirre Company from Messrs. Semidey Brothers in a certain canal for the conveyance of irrigation waters are hereby expressly reserved to said Central Aguirre Co." This provision, taken in connection with the reservation in the lease from Central Aguirre Co. to Smith for "the portion of land necessary for the installation of an irrigation pump, and for the installation of the pipe and ditch which may be required for the irrigation of the adjacent lands," clearly indicates that it was the purpose of these parties that the waters in the main ditch, which had theretofore rightly been diverted both for the use of Teresa and Aguirre, were now to be used solely for the irrigation of Aguirre, and that a pump was to be installed upon Teresa for the irrigation of that hacienda by waters so obtained, instead of by waters diverted from the rivers.

It is further apparent, not only from the contracts between the two sets of parties, but also from the topographical condition

Semidey v. Central Aguirre Co.

of the land, that at a period subsequent to the diversion of the Teresa waters to Aguirre, and the irrigation of Teresa by pump, that Ceneral Aguirre leased the Godreau pump and conducted the waters obtained from that pump upon the Teresa lands, crossing the main ditch at the point where formerly the waters of the main ditch had been divided between Teresa and Carmen, and had used the water obtained from the pump installed upon Teresa upon lands other than Amadeo, Carmen, Teresa, or Aguirre, which condition continued upon the day when the court made its examination, although the owners of the Godreau Hacienda, having ceased to be colonos of the Central Aguirre, the lease by Central Aguirre of the Godreau pump had been canceled, and the new diversion at the Teresa-Carmen point had been constructed, with the head-gates and concrete abutments hereinbefore referred to.

In this connection it is instructive also to observe that in the contract between the company and Gonzalez, dated January 11th, 1907, the company engaged to obtain from Smith his accession to the use of the waters of the Lapa and Majada rivers, then and now in use by said Gonzalez upon lands quite separate and distinct from any of the four haciendas to which the irrigation grant had been made.

It will be further observed that the concession by the company to Gonzalez, acceded to by Smith, by Frazer, Rogers & Noyes, and by Noyes, had nothing whatever to do with the irrigation of Teresa by the pumps installed either upon Teresa or upon the Godreau Hacienda.

From the foregoing facts, and the reasons necessarily and indisputably inferential therefrom, the demurrer must be overruled upon this ground.

*III. Allegation that the Water to which the Teresa Estate was
      Entitled under the Water Concession has Not been Used
      on the Teresa Estate.*

This allegation goes to the contention on the part of com-
plainants that by reason of the acts detailed in the two pre-
ceding grounds of demurrer, the right of complainants to the
use of said waters may be forfeited, by reason of the failure of
their lessee, Central Aguirre Company, and the subsequent and
continuing acts of their alleged sublessees and assignees, because
such acts are in direct contravention of the terms of the con-
cession, due to the diversion of the river waters from the Teresa,
and the continued use of a considerable portion of said river
waters, or of any of them, upon the Gonzalez lands, no part of
which are comprised within the limits of the four haciendas for
whose use the water concession was granted.

It is contended on the part of demurrants that the right of
forfeiture in the government could not exist until said waters
had not been wholly used upon the four haciendas named in the
concession for a period of twenty years continuously, and that,
as the contract of January 11, 1907, with Gonzalez, would ex-
pire before the termination of said twenty years, complainant
could be under no real apprehension, or in no danger.

The court cannot concur in this conclusion as matter of law,
for, while it is provided, under § 418, "the right to make use of
public waters is extinguished by the lapse of the concession and
by nonusage during twenty years," adherence to the contention
of demurrants would be in direct contravention of the general
and settled law governing franchises and concessions. With-
out deeming it necessary to go into the distinction between a non-

user of a concessionary grant in the nature of a public service, it will be sufficient to state that any cession by a sovereignty of any part of the public domain, or of any natural utility, is a rescission of sovereignty to that extent, and is liable to reclamation by the sovereignty at any time if the useful purpose which was to be subserved by the grant is not carried out by the concessionaire. No analogy can be drawn between such grants as the one here under consideration, and perpetual water rights for power and other purposes, as granted under the general laws of the United States; but counsel for both of the parties hereto, with abundant experience with the decisions of the courts of the United States, in continental United States, are familiar with both departmental rulings and judicial decisions as to failure of grantees to use waters from rivers or other streams, for mining or irrigation purposes. These are practically unanimous to the effect that the failure by a grantee to use waters so granted, in the amount, and for the purposes specified in the grant, constitutes a breach of the concessionary contracts so entered into, and subjects them to a rescission at any time upon proof of the fact.

Therefore, and for other reasons too obvious to require argument, this contention of demurrants could not be sustained, even if this concession had not been granted under the Law of Waters of 1866, which provides, among other things, as follows:

"Art. 203. In every concession of the use of public waters a term shall be fixed for the completion of the works. If upon the expiration thereof the works have not been completed, nor any extension of time requested for good cause, the authority which granted the concession shall declare it lapsed, either of its own motion or at the instance of a third party, after first hearing

VI. Porto Rico—8.

the concessionaire. It may make the same declaration whenever, even after the works are completed, there has been a failure to use the water for the continuous period of a year and a day, for the object for which it was granted, unless force majeure, or some other exceptional cause has intervened."

It might be contended that this provision was applicable solely to the use of waters for the production of power, but this specious contention would fail for two reasons: (1) Because "power" in the modern contemplation of such word was unknown in the year 1866, when the Law of Waters was adopted, and no modification was inserted when the Law of Waters was incorporated into the law of Porto Rico; and (2) because the word "works" may be held to include works for irrigation, consisting of canals, ditches, head-gates, and other necessary ancillary adjuncts, such as properly fall under a clear definition of that word.

The Gonzalez diversion was contemplated under the terms of the contract of January 11, 1907, and manifestly and necessarily would include "works" in order that the purpose of the contract might be subserved, in accordance with its terms. The fact that such diversion, in direct contravention of the terms of the grant, has existed for more than "a year and a day," and, although the conceded waters are at present, in part, applied upon the lands of the Teresa, the Gonzalez diversion continues to be considerable, and has been continuous from its completion.

The demurrer must therefore be overruled upon this ground.

## IV. Allegation that the Lessee has Not Kept the Subcanal in Repair.

No discussion of this ground of demurrer is necessary, as it

has already been fully discussed and ruled upon in the consideration of grounds I. and II. of this opinion; and the fact that the waters, after an obvious diversion, and practical obliteration of the Teresa canal, have been, within a comparatively recent period, again applied to it, does not toll the breach, which was apparently in existence at the time of the filing of the bill.

The demurrer must therefore be overruled upon this ground.

## V. Allegation that the Lessee has Failed to Keep the Fences in Repair.

This allegation of the bill is denied in the brief filed in support of the demurrer. The fact did not come under the observation of the court, nor could it have been apparent what removals or restorations had been made, if any, by a physical examination upon the ground, which was, of course, practicable, however, in the diversion of waters through ditches, due to the physical appearance of the same, as to the recent or continuous use of the same for that purpose.

No ruling is therefore made upon this ground.

## VI. Notice to Quit.

The original lease between the parties hereto was executed, with due legal formality, upon July 30th, 1901, and provided that it should be in force and effect: "Second. The duration of this contract shall be for ten years, counting from the first day of August next, with the option or privilege to the Central

Aguirre of a renewal thereof for ten years more under the same conditions, which are hereinafter expressed."

Among the conditions following, thereafter, expressed, were those by which Central Aguirre agreed to observe the terms of the concessionary grant for the use of waters, which has been hereinbefore discussed, considered, and ruled upon, to the effect that a breach of said conditions, with the knowledge and consent of Central Aguirre, had taken place before, and existed on or about August 1, 1911, the expiration of the first period or term expressed in the original lease, and for which breach the notice to quit had been served upon the respondents Central Aguirre Company and Noyes.

Every contract may be rescinded, upon a breach of its terms, by the party against whom the breach has been made; so that, not only was it within the clear right of the complainants herein to declare a rescission upon August 1, 1911, upon allegation of breaches hereinbefore found and adjudged to have been committed, with the legal effect of an absolute termination of said contract, but such rescission could have been declared by complainants, with a similar controlling legal effect, at any time prior to such date that a breach on the part of respondents of the plain provisions of the contract had been committed.

Therefore, in view of the fact that a material breach had been committed prior to March 25th, 1911, upon which date the Central Aguirre attempted an exercise of its option by an attempted extension to its sublessee Smith for a period of ten years from August 1, 1911, of the original lease, this did not have the legal effect of making said extension, in the face of the existing breach.

Otherwise the original lessors, the complainants here, would

Semidey v. Central Aguirre Co.

be without remedy, and the provisions of the lease would be rendered nugatory, without their consent, and beyond their control, and in the face of any assignment, or change which the lessee, or its sublessee or assignees should choose to make.

The notice to quit, given by complainants here to the original lessees, in due season, was notice of their election to terminate the lease; and a "renewal," if any, could only have been "under the same conditions" expressed in the original lease, some of which conditions had upon the date of the notice to quit, and prior thereto, been broken by the respondents.

The demurrer is therefore overruled upon this ground.

## VII. Renewal of Lease.

It is unnecessary to make any comment upon this ground, for the reasons given and the conclusion reached in the consideration of ground number VI.

## VIII. Violation of Joint Resolution.

In view of the resolution reached by the court in the preceding grounds, it is unnecessary for the purposes of the demurrer to give any discussion or conclusion to this ground.

## IX. Acts during Imparlance.

For the reasons given in the consideration of the preceding ground, no discussion of this ground is made.

Semidey v. Central Aguirre Co.

## X. *Multifariousness.*

An examination of the bill, and of the briefs for counsel for both parties, fails to disclose to the court any fact or argument which would sustain this ground of the demurrer.

A prayer for the cancelation of the lease, under the facts hereinbefore stated, is certainly not opposite in its effect to a prayer for an injunction to restrain threatened damage of a continuing nature, in addition to those alleged in the bill as having been committed prior to its filing.

The one is ancillary to the other, and, in the opinion of the court, is a necessary corollary. The prayer of the bill would be incongruous if the relief were not prayed in both aspects.

The demurrer is therefore overruled on this ground.

For the reasons and upon the grounds hereinbefore stated, the demurrer is overruled, with costs, and the respondents directed to answer to the bill on the next rule day.